UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| AVILA FLORES, Reyna Isabel<br><br>　　Plaintiff,<br><br>　　　　v.<br><br>RABABEH, Kheder and RABABEH, Imad<br><br><br><br>　　Defendants | Civ. No: 1:15-cv-1415-TSE-TCB<br><br><br><br>Hearing Date: March 18, 2016<br>　　　　　　　　　10:00 am. |

**Memorandum In Support of Plaintiff's Motion for Default Judgment**

Under Rule 55 of the Federal Rules of Civil Procedure, if a defendant fails to plead or otherwise respond to a lawsuit against him, the plaintiff may seek a default judgment. Plaintiff Reyna Avila served Defendants Kheder and Imad Rababeh with a complaint for unpaid wages and overtime, but Defendants did not file any responsive pleading by the Court's January 13 deadline. Plaintiff now moves the Court for a default judgment in her favor because:

- This Court has subject-matter jurisdiction over the claims pled in her amended complaint, and personal jurisdiction over Defendants themselves;

- Defendants were properly served;

- The amended complaint alleges facts establishing all necessary elements of her claims, as well as Defendants' joint liability; and

- The amended complaint alleges facts establishing the amount of damages Ms. Avila is owed.

1

**Argument**

I. **The Court has jurisdiction to render a default judgment in this case.**

For a court to render a default judgment, it must have both subject-matter jurisdiction over the Plaintiff's claims and personal jurisdiction over the defaulting party. *Dutan v. Sheet Metal Remodeling, LLC*, 48 F. Supp. 3d 860, 866 (E.D. Va. 2014). Both are satisfied here.

    A. **The Court has subject-matter jurisdiction over Plaintiff's claims.**

Plaintiff's claims for unpaid minimum wages and overtime arise under the Fair Labor Standards Act (FLSA), a federal statute. *See* First Amended Complaint, ECF No. 6 at 5–7. District courts have original subject-matter jurisdiction over all civil actions arising under federal statutes. 28 U.S.C. § 1331. The FLSA also specifically authorizes workers to file private lawsuits to enforce the law's minimum-wage and overtime provisions in federal court. 29 U.S.C. § 216(b). Thus, the Court has subject-matter jurisdiction over Plaintiff's claims.

    B. **The Court has personal jurisdiction over the Defendants.**

This Court also has personal jurisdiction over the Defendants. For a federal court to have personal jurisdiction over a defendant, the defendant must be subject to the personal jurisdiction or "long-arm" statute of the state in which the federal court sits. Exercise of personal jurisdiction must also satisfy the minimum-contacts test under the Due Process Clause of the Fourteenth Amendment. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The same facts satisfy both of these jurisdictional requirements. Virginia's personal-jurisdiction statute authorizes jurisdiction over anyone who transacts business in Virginia, contracts to supply goods or services in Virginia, or who possesses any real property in Virginia, among other things. *See* Va. Code § 8.01-328.1. The Due Process Clause authorizes jurisdiction

over anyone who resides in the forum state, or any non-resident who has some contact with the forum state such that it is fair for the defendant to be haled into court there. *See Int'l Shoe*, 326 U.S. at 316. Here, Defendants both reside in Virginia. (Amd. Compl. ¶¶ 3–4). Defendants' acts and omissions giving rise to Plaintiff's complaint occurred at Defendants' restaurant in Virginia. (Amd. Compl. ¶¶ 5–7). And as partners in a Virginia restaurant, Defendants presumably contracted to supply goods or services in Virginia. (*See* Amd. Compl. ¶8). These contacts satisfy both Virginia's jurisdictional statute and the Constitution, and thus the Court has personal jurisdiction over the Defendants.

**II. The Defendants were properly served and have failed to respond.**

After filing the Amended Complaint in this matter, Plaintiff arranged for service of process on the Defendants via the United States Marshals Office. (See ECF Nos. 8–11.) As shown in the executed Summonses filed with the Court, Deputy United States Marshal Desmond Proctor certified that, on December 23, 2015, he served the documents on Rehab Alfroukh at the Defendants' address. (*See id.*). Deputy Marshal Proctor identifies Alfroukh as a person of suitable age and discretion then residing at the Defendants' usual place of abode (*see id*.), making substituted service effective under Fed. R. Civ. P. 4(e)(2)(B). Deputy Marshal Proctor also certified that Defendant Imad Rababeh expressly authorized him to serve the papers on Alfroukh. (*See* ECF Nos. 8–11.). Thus, there was effective substituted service under Rule 4(e)(2)(C) as well.

After the Amended Complaint was served on December 23, 2015, Defendants had 21 days to respond (Fed. R. Civ. P. 12(a)), making their response due by January 13, 2016. No responsive pleadings have been filed, and the time for doing so has expired. In accordance with

Rule 55(a), Plaintiff then requested an entry of default against Defendants, (ECF No. 12), which the Clerk of Court entered on January 21, 2016 (ECF No. 13).

## III. Plaintiff alleges facts sufficient to establish each element of her claims, as well as Defendants' joint liability for those claims.

As demonstrated below, Plaintiff has alleged facts in her Amended Complaint sufficient to establish each element of her FLSA claims for unpaid overtime and minimum wages. She has also alleged facts sufficient to support Defendants' joint liability for those claims. Because Defendants have opted not to respond, all of these factual allegations in her complaint are deemed admitted. *Dutan*, 48 F. Supp. 3d at 865, citing Fed. R. Civ. P. 8(b)(6).

### A. Count 1: Willful Failure to Pay FLSA Overtime Compensation

To establish a FLSA violation for non-payment of overtime, a plaintiff must show that:

- **She was employed by the defendant;**
- **She was engaged in commerce, or in the production of goods for commerce;**
- **She was not exempt from overtime under 29 U.S.C. § 213; and**
- **She worked over 40 hours per workweek and was not compensated at a rate of 1.5 times her regular rate for each hour she worked beyond 40 in any given workweek.**

*See* 29 U.S.C. § 207.

#### 1. Defendants both "employed" the Plaintiff under the FLSA.

The FLSA's minimum-wage and overtime requirements apply to "employees." 29 U.S.C. §§ 206–207. Under the FLSA, the word "employ" includes "to suffer or permit to work," *id.* at § 203(g), which then-Senator Hugo Black approvingly called "the broadest definition that has ever been included in any one act." *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945),

*quoting* 81 Cong. Rec. 7657.[1] A worker can be employed jointly by two or more people under the Act. 29 C.F.R. § 791.2. If the facts show that there is a joint employment relationship, "i.e., that employment by one employer is not completely disassociated from employment by the other employer(s)," then all employers are jointly responsible for their FLSA violations. *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 305 (4th Cir. 2006), *quoting* 29 C.F.R. § 791.2.

Here, Plaintiff has introduced facts sufficient to establish the Defendants' joint and several liability as "employers" under this broad definition. Defendant Kheder Rababeh hired Plaintiff to work at Mount of Lebanon restaurant; set her work schedule and compensation; instructed her in her duties on a day-to-day and hour-by-hour basis; calculated and paid her wages; and kept records of the hours that she worked and the wages she was paid. (Amd. Compl. at ¶¶10–15; Exhibit A, Declaration of Reyna Avila ("Avila Decl."), at ¶6). She was clearly his employee.

Defendant Imad Rababeh, although not involved in Plaintiff's day-to-day supervision, was also Plaintiff's joint employer under the FLSA's broad definition. When he received service of process in this action, Imad identified himself to a Deputy U.S. Marshal as a "partner" in the Mount of Lebanon business, authorized to receive service on behalf of the Kheder Rababeh "organization" (Amd. Compl. at ¶7). Imad has also identified himself in the media as a "manager" of the restaurant, with the authority to adjust break times and working conditions for the restaurant's Muslim employees during Ramadan.[2] And Imad's other duties were consistent

---

[1] The FLSA definitions of "employer" and "employee" are circular and unhelpful: an "employer" includes anyone acting "in the interest of an employer in relation to an employee," and an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(d) and (e).

[2] *See* Voice of America, "U.S. Muslims Make Adjustments for Ramadan," July 24, 2013. Available at http://m.voanews.com/a/us-muslims-make-adjustments-for-ramadan/1709395.html, and attached in pdf. form as Exhibit B.

with those of a joint employer: during Plaintiff's tenure, Imad would work at the restaurant about three days each week and would stay the whole day, working at the till or in the office. (Avila Decl. at ¶8). Imad did the accounting for the restaurant. (*Id.*). Whenever Plaintiff received pay, Imad had her sign the ledger kept by the restaurant (*Id.*). Thus, Imad Rababeh was unquestionably on notice about the obvious and glaring wage violations regarding Plaintiff's pay. And—whether as "partner," "manager," or "accountant"—Imad Rababeh was in a position of sufficient authority within the restaurant to do something about it. Under the circumstances, and given the broad, remedial purposes of the FLSA, this is enough to make him a joint employer. For example, in *Qin Yong Jin v. Any Floors, Inc.*, 2012 WL 777501, 1:10-cv-1201, (E.D. Va. Mar. 5, 2012), Judge O'Grady held that a co-defendant could be held personally liable as an FLSA joint employer where her only responsibility was signing workers' paychecks and who otherwise had little knowledge of the business. Here, by contrast, Imad Rababeh was deeply involved in the day-to-day operations of the business, and he was in a position both to recognize and to remedy Plaintiff's pay problems. Thus, Defendant Imad Rababeh should be deemed a joint employer for purposes of the FLSA.

### 2. The Plaintiff was engaged in "commerce."

The FLSA's minimum-wage and overtime requirements apply to employees engaged in "commerce." 29 U.S.C. §§ 206–207. Under the FLSA, "commerce" means essentially "interstate commerce." *See id*. at § 203(b). Judge Ellis recently held in a similar case against Mount of Lebanon that "[a]t all times relevant to this action, Mount of Lebanon Restaurant was an enterprise engaged in interstate commerce as defined by the FLSA." *Antunez Garcia v. Mount of Lebanon Rest., LLC*, No. 1:15-cv-0543, 2015 WL 4911774, at *2 (E.D. Va. Aug. 13, 2015). The "relevant time" in that case was April 2012 to November 2014 (*see id.*), and there is no reason to

6

think that the interstate character of the enterprise changed between November 2014 and Plaintiff's last day of work the following August. Plaintiff regularly worked with food and other products that Defendants had ordered from other states or that had traveled in interstate commerce. *See* Amd. Compl. at ¶¶8–9. The restaurant may also have grossed over $500,000 in annual revenue. *See id.* at ¶8.[3] Thus, Plaintiff was engaged in commerce under the FLSA.

### 3. The Plaintiff was not exempt from overtime.

The FLSA exempts certain narrow classes of employees from its overtime pay requirements. *See* 29 U.S.C. § 213. But none of these exemptions applies to restaurant workers who do the kinds of things that Plaintiff did: preparing food, cleaning the restaurant, kitchen maintenance, and dishwashing. (*See* Amd. Compl. at ¶9, Avila Decl. at ¶3). And Defendants have introduced no evidence showing that an exemption applies. *See Darveau v. Detecon, Inc.*, 515 F.3d 334, 337 (4th Cir. 2008) (employer bears the burden of proving that an employee's job is exempt).

### 4. The Plaintiff worked over 40 hours each week without being paid time-and-a-half for her hours worked beyond 40 in any given week.

Plaintiff worked at the Mount of Lebanon restaurant from 2011 through August 17, 2015.[4] She was hired to work 6 days a week, for 12 hours each day, for a total of 72 hours per week. (Amd. Compl. at ¶13, Avila Decl. at ¶4).[5] She was paid at a flat weekly rate of $650 per

---

[3] On the posture of a default judgment, Plaintiff—a low-skilled restaurant worker—cannot be expected to know with certainty her employer's gross volume of business.

[4] From 2004 to 2011, Plaintiff was employed at Lebanese Butcher and Restaurant, also owned and run by Kheder Rababeh.

[5] This was the same work schedule that formed the basis of another Mount of Lebanon worker's FLSA lawsuit: *see Antunez Garcia v. Mount of Lebanon Restaurant, LLC*, No. 1:15-cv-0543,

Case 1:15-cv-01415-TSE-TCB   Document 16   Filed 03/01/16   Page 8 of 13 PageID# 62

week. (*Id.*). The FLSA and its implementing regulations contain strict requirements for employers who wish to pay their employees by means of a weekly salary: any weekly salary must also provide an express calculation of the overtime premium, agreed to in advance by employer and employee, or else the pay plan violates the Act. As 29 C.F.R. § 778.500 provides:

> [E]xcept in limited situations under contracts which qualify under [29 U.S.C. § 207(f)][6], it is not possible for an employer lawfully to agree with his employees that they will receive the same total sum, comprising both straight time and overtime compensation, in all weeks without regard to the number of overtime hours (if any) worked in any workweek. [Compliance with § 207's overtime requirements] cannot be achieved by the payment of a fixed salary or by the payment of a lump sum for overtime or by any other method or device.

Here, although Plaintiff worked 32 overtime hours every week, her flat weekly salary did not apply an adjusted time-and-a-half premium to those 32 weekly overtime hours. (*See* Amd. Compl. at ¶¶15–18). This is easily confirmed by those few occasions where Plaintiff had to miss a day of work. Recall that Plaintiff worked six days a week. (Amd. Compl. at ¶13; Avila Decl. at ¶4). If she had to miss a day—one-sixth of her weekly hours—the restaurant reduced her $650 weekly salary by $110, or just over one-sixth of her weekly pay. (Amd. Compl. at ¶16; Avila Decl. at ¶7)). Reducing her salary on an hour-for-hour basis in this way would only make sense if all of her hours—including her 32 weekly overtime hours—were being paid at the same rate.

---

(E.D. Va. Aug. 13, 2015), ECF. No. 11-1 (Plaintiff's damages spreadsheet) and ECF. No. 15 (adopting the spreadsheet as Plaintiff's measure of damages).

[6] In rare instances, Section 207(f) allows employers to use an alternative "fluctuating-workweek" method of complying with the FLSA's overtime provision. But it does not apply here because (1) Plaintiff's weekly hours didn't fluctuate and (2) she had no understanding with Defendants that this alternative method would be used. *See* 29 C.F.R. § 778.114(a).

As the undisputed evidence makes plain, the flat weekly rate paid to Plaintiff was meant to be just that: a flat weekly rate. By failing to pay the overtime premium for Plaintiff's 32 hours of overtime she worked each week, Defendants' pay plan violated the FLSA.

### B. Count 2: Willful Failure to Pay FLSA Minimum Wages

To establish a FLSA violation for failure to pay the minimum wage, a plaintiff must show that:

- **She was employed by the defendant;**
- **She was engaged in commerce, or in the production of goods for commerce;**
- **She was not exempt from the minimum wage under 29 U.S.C. § 213; and**
- **She was not paid at least the minimum wage for every hour she worked in any given workweek.**

*See* 29 U.S.C. § 206. As shown above in the discussion of Plaintiff's overtime claims, elements 1–3 are readily satisfied. The fourth element is also met: the federal minimum wage is $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). For her last five weeks of work, Defendants not pay Plaintiff any wages at all, other than one single payment of $265. (Amd. Compl. at ¶18; Avila Decl. at ¶10). Therefore, Defendant Kheder Rababeh violated the FLSA by failing to pay Ms. Avila at least the minimum wage for every hour she worked during these five workweeks.

### C. By continuing to employ Plaintiff after their LLC had been dissolved, Defendants are personally liable for their FLSA violations.

Plaintiff suffered her FLSA violations in the course of her employment at Defendants' restaurant, Mount of Lebanon. At one time, Mount of Lebanon was organized as an LLC. However, the restaurant's LLC status has been cancelled since November 30, 2013 for failure to pay the annual registration fee. Exhibit C (State Corporations Commission Documents); s*ee also* Va. Code §§ 13.1-1064 (penalty for failure to timely pay annual registration fees) *and* Va. Code § 13.1-1050.2 (automatic cancellation of LLC existence).

9

However, even after dissolution, Defendants continued to carry on the business as if nothing had happened: this makes them personally liable for their acts. In *McLean Bank v. Nelson*, a business had its corporate status automatically cancelled because it failed to file annual reports. 350 S.E.2d 651, 654 (Va. 1986). The Supreme Court of Virginia held that

> It is the corporate form that provides limited liability. Without the corporation, *or some other business organization* not pertinent in this appeal, personal liability exists…. [I]f a group of individuals have not done the things necessary to secure or retain de jure corporate status, then they will not have corporate protection. They will be exposed to personal liability.

*Id.* at 656 (emphasis added).

The *McLean Bank* court's reasoning is just as persuasive in the context of LLCs. Like corporations, one of the main reasons to organize a business as an LLCs is to limit the owners' and operators' personal liability. And as with a corporation, when an LLC is involuntarily dissolved for failure to comply with statutory requirements, its operators become trustees in liquidation, with a legal duty to liquidate the business in an orderly way. *Compare* Va. Code § 13.1-753(A) (corporations) *with* Va. Code § 13.1-1050.2(A) and (C) (LLCs). "The directors' difficulty arises when they violate the law and carry on the business instead of liquidating it. They then become personally liable." *Flip Mortgage Corp. v. McElhone*, 841 F.2d 531, 534-35 (4th Cir. 1988). That is precisely what Defendants did here. After Mount of Lebanon lost its LLC status on November 30, 2013, rather than liquidate the business, they just kept on running the restaurant as if nothing had happened. Thus, they are exposed to personal liability.

**IV. Plaintiff alleges facts sufficient to establish the amount of her damages.**

    **A. Because defendant's FLSA violations were "willful," the court should apply a three-year limitations period**.

The FLSA provides a statute of limitations of two years, unless the claim arises from a "willful" violation, in which case a three-year limitations period applies. 29 U.S.C. § 255(a). A violation is willful if the employer either knew or showed reckless disregard for whether its conduct violated the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 358 (4th Cir. 2011).

Here, Plaintiff alleges that she worked 72 hours every week, per the schedule set by her employers. She was plainly and obviously working overtime, not only with her employers' knowledge, but at their direction. Nonetheless, Defendants never paid Plaintiff any overtime premium for her 32 weekly overtime hours, during all the years she worked for them. (Amd. Compl. at ¶17; Avila Decl. at ¶9). During Plaintiff's last five weeks of work, Defendants paid Plaintiff no compensation at all for the work she performed, other than a single payment of $265, in flagrant violation of the FLSA's minimum-wage requirement (*See* Amd. Compl. at ¶18; Avila Decl. at ¶10). Finally, the restaurant is a repeat offender, having committed nearly identical FLSA violations against another of its employees: the employee was paid at a flat weekly rate that did not apply an adjusted time-and-a-half premium to the worker's overtime hours, and the worker was not paid any wages at all for his last five weeks of work. *Antunez Garcia v. Mount of Lebanon Restaurant, LLC*, No. 1:15-cv-0543, 2015 WL 4911774, (E.D. Va. 2015), ECF No. 14 at 3–4 (magistrate's proposed findings of fact) and ECF No. 15 (adopting the magistrate's factual findings). Under these circumstances, Defendants' FLSA violations should be deemed knowing or reckless, and a three-year limitations period should apply.

### B. Amount of FLSA Damages

For any week where Plaintiff worked but was not paid, she is entitled to the minimum wage and an additional equal amount as liquidated damages. 29 U.S.C. § 216(b). For any week where Plaintiff worked overtime but was not paid an overtime premium, she is further entitled to the overtime premium and an additional equal amount as liquidated damages. *Id.*

The spreadsheet filed with this motion as Exhibit D explains Plaintiff's unpaid wage calculations. The spreadsheet shows (1) the workweek; (2) the amount that Defendants paid Plaintiff for that workweek; (3) the hours Plaintiff worked in that workweek; (4) Plaintiff's regular hourly rate for that workweek; (5) Plaintiff's overtime rate for that workweek; (6) the unpaid minimum wages owed to Plaintiff for that workweek; (7) the unpaid overtime wages owed to Plaintiff for that workweek; and (8) the total wages Defendants owe Plaintiff for that workweek. The spreadsheet shows the total amount of unpaid minimum and overtime wages Defendants owe Plaintiff: $23,395.95.

The FLSA also permits the Court to award additional liquidated damages in an amount equal to the unpaid compensation. 29 U.S.C. § 216(b). While the decision to award such damages rests in the Court's sound discretion, the Fourth Circuit has noted that the FLSA "plainly envisions" the award of liquidated damages as "the norm" for plaintiffs who prevail. *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir.1997). The court may exercise its discretion not to award liquidated damages only if the employer satisfies the court that the employer had a good-faith belief—and objectively reasonable grounds to believe—that it had complied with the law. *Id.* On the posture of a default judgment, of course, the employer has made no such showing, making the award of liquidated damages "generally mandatory." *See Kennedy v. A Touch of Patience Shared Housing, Inc.*, 779 F. Supp. 2d 516, 524 (E.D. Va. 2011). For these reasons,

Plaintiff respectfully requests that the Court award her liquidated damages in an amount equal to her actual damages—$23,395.95.

Thus, Plaintiff's total FLSA damages are $46,791.90, and plaintiff respectfully requests a default judgment in that amount.

Respectfully submitted,

/s/ Nicholas Cooper Marritz
Nicholas Cooper Marritz (VSB #89795)
Simon Y. Sandoval-Moshenberg (VSB #77110)
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Tel: (703) 720-5607
Fax: (703) 778-3454
nicholas@justice4all.org