```
                UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA
                      Alexandria Division

REYNA ISABEL AVILA FLORES      )
     Plaintiff,                )
                               )
          v.                   )  Civil Action No. 1:15cv1415
                               )
KHEDER RABABEH                 )
     Defendant.                )
```

REPORT AND RECOMMENDATION

THIS MATTER comes before the Court on plaintiff's Motion for Default Judgment (Dkt. 15.) After a representative for defendant Kheder Rababeh failed to respond to plaintiff's Motion, appear at the hearing on March 18, 2016, or file an appropriate responsive pleading within the additional time granted by order of this Court, the undersigned Magistrate Judge took this matter under advisement.[1]

I. INTRODUCTION

**A. Background**

Plaintiff Reyna Isabel Avila Flores ("plaintiff") is an adult resident of Fairfax County, Virginia. (Am. Compl. ¶ 2.)

---

[1] The record before the Court includes the First Amended Complaint ("Am. Compl.") (Dkt. 6), plaintiff's Motion for Default Judgment ("Mot. Default J.") (Dkt. 15), the Memorandum in Support of Plaintiff's Motion for Default Judgment ("Mem. Supp. Mot. Default J.") (Dkt. 16), the Declaration of Reyna Isabel Avila Flores ("Avila Decl.") (Dkt. 16-1), plaintiff's Motion for Attorney's Fees ("Mot. Attorney's Fees") (Dkt. 27), Plaintiff's Memorandum of Law in Support of her Motion for Attorney's Fees ("Mem. Supp. Mot. Attorney's Fees") (Dkt. 28), the Declaration of Simon Sandoval-Moshenberg, Esq. ("Sandoval-Moshenberg Decl.") (Dkt. 28-1), the Declaration of Nicholas Marritz, Esq. ("Marritz Decl.") (Dkt. 28-2), and all exhibits and attachments submitted with those filings.

1

Defendant Kheder Rababeh ("defendant") is also an adult resident of Fairfax County, Virginia and is the owner and operator of the Mount of Lebanon Restaurant. (Id. at ¶ 3.) Defendant employed plaintiff from about 2011 through August 17, 2015, during which time plaintiff's duties included preparing food, cleaning the restaurant, kitchen maintenance, and dishwashing. (Id. at ¶ 9.) During plaintiff's employment, defendant paid plaintiff at a flat rate of $650.00 per week. (Id. at ¶ 15.) Although plaintiff worked approximately 72 hours per week, defendant did not pay plaintiff at a rate of one-and-one-half times her regular hourly wage for those hours she worked above 40 hours per week. (Id. at ¶¶ 13, 16-17.) Defendant also did not pay plaintiff for her last five weeks of work, except for a single payment of $265.00. (Id. at ¶ 18.) On October 30, 2015, plaintiff filed suit against defendant and his son, Imad Rababeh, alleging overtime and minimum wage violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq. (Id. at ¶ 1; Dkt. 1.) Plaintiff now seeks her unpaid overtime and minimum wages, liquidated damages, and attorneys' fees. (Mem. Supp. Mot. Default J. 12-13; Dkt. 25; Mot. Attorney's Fees.)

### B. Jurisdiction and Venue

Before the Court can render default judgment, it must have both subject matter and personal jurisdiction over the defaulting party.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which provides that district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. This dispute arises under the FLSA, 29 U.S.C. § 201 et seq., which provides relief for an action to recover unpaid minimum wages, unpaid overtime compensation, liquidated damages, and attorneys' fees and costs. See 29 U.S.C. § 216(b). Therefore, federal question jurisdiction exists for this action.

This Court also has personal jurisdiction over defendant because defendant is a Virginia resident. (Am. Compl. ¶ 3.) Pursuant to 28 U.S.C. § 1391(b), venue is proper in this judicial district because defendant resides in this district and the acts and omissions giving rise to this action occurred in this district. (Am. Compl. ¶ 1.)

### C. Service of Process

As a general rule, a defendant must be served with the summons and complaint filed with the court. Fed. R. Civ. P. 4. On December 23, 2015, Deputy U.S. Marshal Desmond Proctor left the summons and amended complaint at defendant's residence with Rehab Jebrah Alfroukh, a person of suitable age and discretion who resides there. (Dkts. 8 and 9.) Therefore, service was proper under Federal Rule of Civil Procedure 4(e).

**D. Grounds for Default Judgment**

Defendant has not appeared, answered, or otherwise filed any responsive pleadings in this case. On January 21, 2016, the Clerk of this Court entered default as to defendant Kheder Rababeh and his son, Imad Rababeh, pursuant to plaintiff's Request for Entry of Default and Federal Rule of Civil Procedure 55(a). (Dkt. 13.) On February 17, 2016, the Honorable T.S. Ellis, III ordered that plaintiff file a prompt Motion for Default Judgment. (Dkt. 14.) Plaintiff filed a Motion for Default Judgment on March 1, 2016. (Dkt. 15.) The undersigned held a hearing on plaintiff's Motion on March 18, 2016, at which defendant's son and co-defendant Imad Rababeh appeared pro se. (Dkt. 18.) Interpreting Imad Rababeh's actions as a Motion for Leave to File a Late Answer, the Court gave defendants Kheder Rababeh and Imad Rababeh until April 8, 2016, to file an appropriate responsive pleading that accorded with the Federal Rules of Civil Procedure. (Dkt. 19.)

On April 7, 2016, Imad Rababeh filed a letter with the Court, attaching a letter from his attorney that sought a further extension to file a responsive pleading. (Dkt. 21.) This Court again granted Imad Rababeh an extension, giving him until May 2, 2016 to file an appropriate responsive pleading. (Dkt. 22.) However, the Court did not grant defendant Kheder Rababeh any further extension. Defendant Kheder Rababeh then failed to

4

file any responsive pleading by the April 8, 2016 deadline.

On April 29, 2016, plaintiff filed a notice of voluntary dismissal as to all claims against Imad Rababeh, having settled her claims against him. (Dkt. 23.) That same day, Judge Ellis approved the dismissal of plaintiff's claims against Imad Rababeh. (Dkt. 24.) However, plaintiff's claims against defendant Kheder Rababeh remain pending. (Dkts. 23 and 25.) As such, having never filed any responsive pleading, defendant Kheder Rababeh remains in default and the undersigned proceeds to consider plaintiff's Motion for Default Judgment against him.

## II. FINDINGS OF FACT

Based upon a full review of the pleadings and the record in this case, the undersigned Magistrate Judge makes the following findings.

Plaintiff and defendant are both adult residents of Fairfax County, Virginia. (Am. Compl. ¶¶ 2-3.) Defendant is the owner and operator of the Mount of Lebanon Restaurant ("the Restaurant"), which is located in Fairfax County, Virginia. (Id. at ¶¶ 3, 5.) At one time, the Restaurant was organized as an LLC, and defendant was a member of the LLC. (Id. at ¶ 5; Mem. Supp. Mot. Default J. Ex. C.) However, the Restaurant's LLC status was cancelled on November 30, 2013 for failure to pay the annual registration fee. (Am. Compl. ¶ 5; Mem. Supp. Mot. Default J. Ex. C.) Since that date, the Restaurant has continued

5

to operate, apparently being ran as a partnership between defendant and his son, Imad Rababeh. (Am. Compl. ¶¶ 6-7.)

At all times relevant to plaintiff's claims, the Restaurant had an annual gross volume of sales made in an amount exceeding $500,000, and the Restaurant ordered and received supplies from other states or that had traveled through interstate commerce. (Id. at ¶ 8; Mem. Supp. Mot. Default J. 6-7.) Defendant controlled the day-to-day operations of the Restaurant, supervised plaintiff, and had the power to hire, fire, and discipline employees, including plaintiff. (Am. Compl. ¶¶ 10, 12; Avila Decl. ¶¶ 6-7.) Defendant also set and determined plaintiff's work schedule and rate of pay and exercised the ability to dock plaintiff's pay. (Am. Compl. ¶¶ 10, 12; Avila Decl. ¶¶ 6-7.)

Defendant employed plaintiff at the Restaurant from about 2011 through August 17, 2015. (Am. Compl. ¶ 9; Avila Decl. ¶¶ 2, 11.) Plaintiff's duties included preparing food, cleaning the Restaurant, doing kitchen maintenance, and dishwashing. (Am. Compl. ¶ 9; Avila Decl. ¶ 3.) During plaintiff's employment, defendant paid plaintiff a wage of $650.00 per week. (Am. Compl. ¶ 15; Avila Decl. ¶ 4.) Plaintiff usually worked six days per week, 12 hours per day, totaling 72 hours per week. (Am. Compl. ¶¶ 13, 16; Avila Decl. ¶ 4.) Thus plaintiff's regular hourly

6

wage was approximately $9.02.[2] (Mem. Supp. Mot. Default J. Ex. D.) However, defendant did not pay plaintiff at a rate of one-and-one-half times her regular hourly wage for those hours she worked above 40 hours per week. (Am. Compl. ¶ 17; Avila Decl. ¶ 9.) Therefore, plaintiff was not paid the additional half of her regular hourly rate for her overtime hours. Defendant also did not pay plaintiff for her last five weeks of work, except for a single payment of $265.00. (Am. Compl. ¶ 18; Avila Decl. ¶ 10.)

### III. EVALUATION OF PLAINTIFF'S COMPLAINT

Where a defendant has defaulted, the facts set forth in the plaintiff's complaint are deemed admitted. Before entering default judgment, however, the Court must evaluate the plaintiff's complaint to ensure that the complaint properly states a claim. GlobalSantaFe Corp. v. Globalsantafe.com, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). As such, it is appropriate to evaluate plaintiff's claim against the standards of Federal Rule of Civil Procedure 12(b)(6).

Plaintiff moves for the Court to grant default judgment pursuant to her allegations that defendant violated the overtime compensation and minimum wage provisions of the FLSA, 29 U.S.C.

---

[2] The regular rate under the FLSA is an hourly rate. 29 C.F.R. § 778.109. Thus to calculate her regular hourly rate, plaintiff's weekly wage must be divided by the number of hours which her salary was intended to compensate. 29 C.F.R. § 778.113(a). Plaintiff has attested that she was hired to work 72 hours per week, and that she normally worked 72 hours per week. (Am. Compl. ¶ 13; Avila Decl. ¶ 4.) Therefore, plaintiff's regular hourly rate is $650.00 / 72 hours per week, which equals approximately $9.02 per hour.

7

§§ 206 and 207.

## A. Unpaid Overtime Wages

In order to establish a violation of the FLSA for non-payment of overtime wages, a plaintiff must show that (1) she was employed by the defendant, (2) plaintiff was engaged in interstate commerce or in the production of goods for interstate commerce, (3) plaintiff worked over 40 hours per work-week, (4) plaintiff was not compensated at a rate of one-and-one-half times her regular rate for each hour worked in excess of 40 hours per work-week, and (5) none of the exemptions in 29 U.S.C. § 213 applied to plaintiff's position. See 29 U.S.C. § 207(a); Davis v. Food Lion, 792 F.2d 1274, 1276-77 (4th Cir. 1986). Here, the Amended Complaint and plaintiff's declaration set forth each element of the claim.

First, plaintiff was employed by defendant. The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "Employ" is defined to include "to suffer or permit to work." 29 U.S.C. § 203(g). Furthermore, individual defendants can be held liable as employers under the FLSA. See Brock v. Hamad, 867 F.2d 804, 808 n.6 (4th Cir. 1989). Under the majority rule, an individual corporate officer may be subject to liability in his individual capacity if he acts as a supervisor with sufficient control over the conditions and terms

of a plaintiff's employment. <u>Zegarra v. Marco Polo, Inc.</u>, No. 1:08cv891, 2009 U.S. Dist. LEXIS 3845, at *5-6 (E.D. Va. Jan. 21, 2009) (citing <u>Kilvitis v. County of Luzerne</u>, 52 F. Supp. 2d 403, 413 (M.D. Pa. 1999)). Here, defendant is the owner and operator of the Restaurant. (Am. Compl. ¶ 3.) Defendant controlled the day-to-day operations of the Restaurant, supervised plaintiff, and had the power to hire, fire, and discipline employees, including plaintiff. (Am. Compl. ¶¶ 10, 12; Avila Decl. ¶¶ 6-7.) Defendant also set and determined plaintiff's work schedule and rate of pay and exercised the ability to dock plaintiff's pay. (Am. Compl. ¶¶ 10, 12; Avila Decl. ¶¶ 6-7.) In addition, because defendant has carried on the business of the Restaurant after its LLC status was cancelled, he is now personally liable. See <u>Flip Mortgage Corp. v. McElhone</u>, 841 F.2d 531, 534-35 (4th Cir. 1988). Therefore, defendant is an employer for the purposes of the FLSA.

Defendant employed plaintiff at the Restaurant from 2011 through August 17, 2015. (Am. Compl. ¶ 9; Avila Decl. ¶¶ 2, 11.) Plaintiff's duties included preparing food, cleaning the Restaurant, doing kitchen maintenance, and dishwashing. (Am. Compl. ¶ 9; Avila Decl. ¶ 3.) During plaintiff's employment, defendant paid plaintiff a weekly wage. (Am. Compl. ¶ 15; Avila Decl. ¶ 4.) Therefore, plaintiff alleged facts sufficient to satisfy the first element of an overtime violation claim under

the FLSA.

Second, the Amended Complaint shows that plaintiff was engaged in interstate commerce or in the production of goods for interstate commerce. Pursuant to the FLSA, an employee who works for an enterprise engaged in commerce or the production of goods for commerce is an employee covered by the Act regardless of her actual work duties. <u>Russell v. Cont'l Rest., Inc.</u>, 430 F. Supp. 2d 521, 524 (D. Md. 2006) (citing 29 U.S.C. § 203(s)(1)(A)). An "enterprise engaged in commerce or in the production of goods for commerce" is defined as one that

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)[.]

29 U.S.C. § 203(s)(1)(A). Here, plaintiff worked for defendant at the Restaurant. (Am. Compl. ¶ 9; Avila Decl. ¶ 2.) The Restaurant ordered and received supplies from other states or that had traveled through interstate commerce, and employees including plaintiff handled those supplies. (Am. Compl. ¶¶ 8-9; Mem. Supp. Mot. Default J. 6-7.) Furthermore, at all times relevant to this action, the gross annual volume of sales made by the Restaurant exceeded $500,000. (Am. Compl. ¶ 8.) Therefore, plaintiff was engaged in interstate commerce within

10

the meaning of 29 U.S.C. § 203(s)(1)(A).

Third, plaintiff shows that she worked over 40 hours per week during the time period for which she was employed by defendant. Plaintiff worked 72 hours per week.[3] (Am. Compl. ¶ 13; Avila Decl. ¶ 4; Mem. Supp. Mot. Default J. 7.) Plaintiff submitted a sworn declaration in support of that evidence. Therefore, plaintiff adequately demonstrated facts to support this element of her claim.

Fourth, plaintiff shows that she was not compensated at a rate of one-and-one-half times her regular rate for each hour worked in excess of 40 hours per week. As noted above, plaintiff

---

[3] The FLSA requires the employer to keep certain records of hours worked and wages paid. 29 U.S.C. § 211(c). Where the employer fails to keep adequate records, the employee enjoys a lenient burden of proof. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946), *superseded by statute on other grounds as recognized in* IBP, Inc. v. Alvarez, 546 U.S. 21, 25-28 (2005). As the Supreme Court held in Anderson,

> [A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer . . . . If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. . . . It is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages.

328 U.S. at 687-88. Furthermore, an employee's affidavit about his recollection of the hours he worked and the pay he received, if deemed credible by the Court, may be a basis for the Court to award damages. See, e.g., Wirtz v. Durham Sandwich Co., 367 F.2d 810, 812 (4th Cir. 1966); Lopez v. Lawns 'R' Us, Civil No. DKC 07-2979, 2008 U.S. Dist. LEXIS 112120, at *9 (D. Md. May 23, 2008) ("An employee's testimony as to his recollection of the hours he worked and the pay he received, if considered credible by the trier of fact, is sufficient to establish a prima facie case of wages owed.").

11

worked 72 hours per week while employed by defendant. (Am. Compl. ¶ 13; Avila Decl. ¶ 4; Mem. Supp. Mot. Default J. 7.) Plaintiff represents in her sworn affidavit that she was not paid at the required overtime rate of one-and-one-half times her hourly rate for those hours she worked over 40 hours per week. (Avila Decl. ¶ 9.) As such, this element is satisfied.

Fifth, no evidence has been produced to show that any of the exemptions listed in 29 U.S.C. § 213 apply to plaintiff. Consequently, plaintiff appears to be a covered employee entitled to payment of overtime wages. See Darveau v. Detecon, Inc., 515 F.3d 334, 337 (4th Cir. 2008) ("An employer bears the burden of proving that a particular employee's job falls within such an exemption.").

### B. Unpaid Minimum Wages

To establish a violation of the FLSA for non-payment of minimum wages under 29 U.S.C. § 206, a plaintiff must show that (1) plaintiff was employed by the defendant, (2) plaintiff was engaged in interstate commerce or in the production of goods for interstate commerce, (3) plaintiff was not compensated for all hours worked during each work-week at a rate equal to or greater than the applicable minimum wage, and (4) none of the exemptions in 29 U.S.C. § 213 applied to plaintiff's position. See 29 U.S.C. § 206. Here, the Amended Complaint and plaintiff's declaration satisfy each element of this claim.

First, as discussed above, plaintiff was employed by defendant (who is an employer for the purposes of the FLSA). Defendant employed plaintiff at the Restaurant from 2011 through August 17, 2015. (Am. Compl. ¶ 9; Avila Decl. ¶¶ 2, 11.) Plaintiff's duties included preparing food, cleaning the Restaurant, doing kitchen maintenance, and dishwashing. (Am. Compl. ¶ 9; Avila Decl. ¶ 3.) During plaintiff's employment, defendant paid plaintiff a weekly wage. (Am. Compl. ¶ 15; Avila Decl. ¶ 4.) Therefore, plaintiff alleged facts sufficient to satisfy the first element of a minimum wage violation claim under the FLSA.

Second, as similarly discussed above, the Amended Complaint shows that plaintiff was engaged in interstate commerce or in the production of goods for interstate commerce. Plaintiff worked for defendant at the Restaurant. (Am. Compl. ¶ 9; Avila Decl. ¶ 2.) The Restaurant ordered and received supplies from other states or that had traveled through interstate commerce, and employees including plaintiff handled those supplies. (Am. Compl. ¶¶ 8-9; Mem. Supp. Mot. Default J. 6-7.) Furthermore, at all times relevant to this action, the gross annual volume of sales made by the Restaurant exceeded $500,000. (Am. Compl. ¶ 8.) Therefore, plaintiff was engaged in interstate commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

Third, plaintiff shows that she was not adequately

compensated pursuant to the FLSA's mandates. From 2011 through August 17, 2015, plaintiff worked on average 72 hours per week. (Am. Compl. ¶ 13; Avila Decl. ¶ 4.) However, defendant did not pay plaintiff for her last five weeks of work, except for a single payment of $265.00. (Am. Compl. ¶ 18; Avila Decl. ¶ 10; Mem. Supp. Mot. Default J. 9.) Plaintiff submitted a sworn declaration in support of that evidence.[4] Because $265.00 falls well short of $7.25 per hour, which is the minimum wage set by the FLSA, plaintiff adequately demonstrated facts to support this element of her claim. See 29 U.S.C. § 206(a)(1)(C).

Finally, no evidence has been produced to show that any of the exemptions listed in 29 U.S.C. § 213 apply to plaintiff. Consequently, plaintiff appears to be a covered employee entitled to payment of minimum wages. See Darveau v. Detecon, Inc., 515 F.3d 334, 337 (4th Cir. 2008) ("An employer bears the burden of proving that a particular employee's job falls within such an exemption.").

## IV. REQUESTED RELIEF

Plaintiff requests that the Court (1) grant default judgment against defendant Kheder Rababeh in the amount of $43,791.90, consisting of $23,395.95 in unpaid overtime and minimum wages plus an equal amount in liquidated damages, minus the $3,000.00 plaintiff received in settlement from Imad

---

[4] See supra note 3 regarding plaintiff's burden of proof and the permitted use of an employee's affidavit as proof of hours worked and pay received.

14

Rababeh,[5] and (2) award reasonable attorneys' fees.[6] (Mem. Supp. Mot. Default J. 12-13; Dkt. 25; Mot. Attorney's Fees; Mem. Supp. Mot. Attorney's Fees 1, 8.)

FLSA provides that "[a]ny employer who violates [the Act] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Pursuant to the FLSA, all hours past 40 worked in any given week must be compensated at a rate of "not less than one and one-half times the regular rate." 29 U.S.C. § 207(a)(1). Additionally, the minimum wage under FLSA is $7.25 per hour. 29 U.S.C. § 206(a)(1)(C).

Here, during plaintiff's employment at the Restaurant from 2011 to August 17, 2015, defendant paid plaintiff $650.00 per week. (Am. Compl. ¶¶ 9, 15; Avila Decl. ¶ 4.) Accordingly, for the entire period of plaintiff's employment with defendant for

---

[5] However, because the undersigned has used the exact regular and overtime rates rather than the rounded-down approximations, and because the undersigned calculated plaintiff's unpaid straight wages based on her regular rate rather than the minimum wage (as discussed below), the undersigned has calculated total damages figures slightly greater than those calculated and requested by plaintiff. Consequently, the undersigned ultimately recommends the greater amounts calculated herein.

[6] Plaintiff did not request attorneys' fees in her Motion for Default Judgment, but she did request attorneys' fees in her Renewed Motion for Default Judgment Against Defendant Kheder Rababeh, which she filed after defendant failed to respond in the additional time granted by the Court. Plaintiff also filed, at the instruction of the Court, a Motion for Attorney's Fees, which seeks an award of attorneys' fees. Because the FLSA provides for the mandatory award of attorneys' fees (as discussed below), the undersigned will address this relief.

which she was paid, and which falls within the statute of limitations period,[7] plaintiff is owed the additional half of her regular hourly rate for those hours she worked above 40 hours per week. Plaintiff worked and received her regular weekly wage for 140 weeks with 32 overtime hours per week, which equals 4,480 overtime hours. (Mem. Supp. Mot. Default J. Ex. D.) As discussed above, plaintiff's regular hourly rate was approximately $9.02.[8] Therefore, defendant owes plaintiff (1/2) x ($9.02) x (4,480 overtime hours), which equals $20,222.22.

Additionally, plaintiff was not paid her last five weeks of work, except for a single payment of $265.00. (Am. Compl. ¶ 18; Avila Decl. ¶ 10.) When an employer fails to pay an employee straight wages in a week in which the employee worked overtime, the unpaid straight wages are compensated at the employee's regular rate. See Koelker v. Mayor of Cumberland, 599 F. Supp. 2d 624, 634-35, 637 (D. Md. 2009); Reich v. Midwest Body Corp., 843 F. Supp. 1249, 1251-52 (N.D. Ill. 1994); see also 29 C.F.R. § 778.315. If an employee did not work any overtime in an unpaid

---

[7] The statute of limitations under the FLSA is three years for actions arising out of willful violations. 29 U.S.C. § 255(a). Here, due to the extended period of defendant's violations and his lack of defense, the three year statute of limitations is appropriate. Thus plaintiff may recover as far back as October 30, 2012. Accordingly, in her declaration, plaintiff has calculated her damages based on her hours worked since October 31, 2012. (Mem. Supp. Mot. Default J. Ex. D.)

[8] The undersigned notes that $9.02 is a rounded-down approximation. Plaintiff calculated her damages using this value. However, the undersigned has performed the calculations contained herein using the exact value of (650/72). The $9.02 approximate rate is merely included above for simplicity and readability.

week, that employee is owed the minimum wage. See Monahan v. County of Chesterfield, 95 F.3d 1263, 1282 (4th Cir. 1996) (stating that, for straight time to be recovered under the FLSA, there must have been a minimum wage or maximum hours violation). Here, plaintiff worked overtime in each of her last five weeks. (Mem. Supp. Mot. Default J. Ex. D.) Thus defendant owes plaintiff straight wages at her regular rate and overtime compensation at the corresponding rate. Accordingly, for the five weeks in which plaintiff only received $265.00 total, defendant owes plaintiff ($9.02) x (200 regular hours), plus ($13.53) x (155 overtime hours), minus ($265.00). (Mem. Supp. Mot. Default J. Ex. D; Dkt. 25.) This equals $3,639.52.

Furthermore, in FLSA cases, employees routinely are awarded an amount of liquidated damages equal to unpaid wages. See 29 U.S.C. § 216(b); Donovan v. Bel-Loc Diner, Inc., 780 F.2d 1113, 1118 (4th Cir. 1985). An employer may attempt to show that the violation of the FLSA was in good faith in an effort to avoid payment of the liquidated amount. See 29 U.S.C. § 260; Donovan, 780 F.2d at 1118. In this case, the employer has failed to appear and present any defense to plaintiff's claim of a willful violation of the FLSA. Accordingly, an award of liquidated damages equal to the unpaid wages is appropriate.

For these reasons, the undersigned recommends that default judgment be entered against defendant Kheder Rababeh in the

17

amount of $44,723.48, consisting of $23,861.74 in unpaid overtime and straight wages and $23,861.74 in liquidated damages under the FLSA, and minus the $3,000.00 paid to plaintiff by Imad Rababeh.

The FLSA also provides for the mandatory award of attorneys' fees and costs of the action. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). At the instruction of the Court, plaintiff has filed a Motion for Attorney's Fees and supporting materials while the undersigned has the Motion for Default Judgment under advisement, so that the undersigned may include a recommendation as to an award of attorneys' fees and costs. (Dkts. 27 and 28.)

In support of her request for attorneys' fees, plaintiff submitted a memorandum of law in support of her motion for attorney's fees, which attached the Declaration of Simon Sandoval-Moshenberg and the Declaration of Nicholas Marritz. (Dkt. 28.) Plaintiff seeks $11,088.00 in attorneys' fees, comprised of 3.2 hours by attorney Simon Sandoval-Moshenberg at a rate of $425.00 per hour and 30.4 hours by attorney Nicholas Marritz at a rate of $320.00 per hour. (Mem. Supp. Mot. Attorney's Fees 8; Sandoval-Moshenberg Decl. ¶¶ 7-11; Marritz Decl. ¶¶ 7-10, Ex. A.) Because plaintiff filed this case *in*

*forma pauperis*, plaintiff has incurred no compensable costs and accordingly does not seek an award of costs. (Mem. Supp. Mot. Attorney's Fees 1; Sandoval-Moshenberg Decl. ¶ 13; Marritz Decl. ¶ 12.) The undersigned has reviewed plaintiff's memorandum and the declarations of Mr. Sandoval-Moshenberg and Mr. Marritz and finds that these amounts are reasonable and necessary to effectuate relief under the FLSA. Therefore, the undersigned recommends that plaintiff be awarded $11,088.00 in attorneys' fees.

## V. RECOMMENDATION

For the reasons outlined above, the undersigned recommends that default judgment be entered in favor of plaintiff Reyna Isabel Avila Flores against defendant Kheder Rababeh in the total amount of $55,811.48, which consists of $23,861.74 in unpaid overtime and straight wages, $23,861.74 in liquidated damages, $11,088.00 in attorneys' fees, and less the $3,000.00 plaintiff received from Imad Rababeh.

## VI. <u>NOTICE</u>

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and to defendant at the following address:

Kheder Rababeh
5006 Terrell St.
Annandale, VA 22003

/s/
Theresa Carroll Buchanan
United States Magistrate Judge
THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

June 15, 2016
Alexandria, Virginia